**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | No. 0-10-bk-30556-JMM |
| KENNETH L. STEVENSON, | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | |
| | ) | (First and Final Fee Application ECF No. 53; |
| | ) | |
| _____Debtor._____ | ) | Debtor's Motion to Dismiss Case ECF No. 47) |

## I. OVERVIEW

A hearing was held on April 8, 2011, on Debtor's First and Final Application for Payment of Compensation for Debtor's Counsel, Robert M. Cook, of Law Offices of Robert M. Cook, PLLC ("Counsel") (ECF. No. 53), and Debtor's Motion for Voluntary Dismissal of the Case (ECF No. 47). Counsel appeared on behalf of Debtor.

The Assistant United States Trustee ("U.S. Trustee") and creditors Theresa and Wilfred Wemhoff filed objections (ECF Nos. 56, 60 and 62). Christopher Pattock appeared for the U.S. Trustee, while the Wemhoffs did not appear.

At issue was whether Counsel had fully disclosed all of his connections with Debtor and related parties and entities and potential conflicts in this case, and whether the fees and costs requested were reasonable and necessary. Also at issue was whether dismissal would be prejudicial to creditors of the estate. In its objection, the U.S. Trustee also noted that Debtor has failed to pay

the quarterly fees or to file any monthly operating reports, from which to determine any outstanding administrative expense. The parties fully briefed and argued the points, and the court has reviewed the relevant law, as well as the file. The court's decision follows.

## II. JURISDICTION

This court has core jurisdiction over fee disputes, which are requested administrative expenses, and over dismissal or conversion of a case. 28 U.S.C. § 1334; § 157(b)(2)(A), (B), (O).

## III. FACTS AND PROCEDURE

Kenneth Stevenson ("Debtor") filed a voluntary Chapter 11 bankruptcy petition on September 23, 2010 (the "Petition Date"). On the Petition Date, Debtor was incarcerated at the Yuma County Adult Detention Facility. (See Debtor's Motion to Waive Appearance at 341 Meeting, ECF No. 21).

Pre-petition, Debtor was in the auto sales business known as T & K Enterprises or T & K Sales. Prior to bankruptcy, essentially all of its vehicle inventory was seized and liquidated by the trustee of another bankruptcy case, In re Two Guys Auto Center, LLC. Debtor also owns a 20% interest in Yuma Funding Inc., an auto finance business, which was put into receivership in 2010. According to Debtor's Schedules and Statements, he is retired. He owns no real property, and the $1.5 million in personal property assets mainly consisted of the alleged vehicle inventory, now seized and gone. Debtor receives $1,330 per month in Social Security benefits. His monthly expenses are $1,200, leaving a net income of $130 per month. He listed no secured debt, approximately $3,000 in priority debt, and more than $4.7 million in general unsecured debt. Approximately $3 million of the unsecured debt is a disputed claim belonging to AEA Federal Credit Union that is associated with the vehicle flooring financing.

On October 3, 2010, the court granted the application by Debtor to employ Counsel. (ECF. No. 14). Counsel filed a Bankruptcy Rule 2014 affidavit in which he declared that he "does

not hold or represent interests adverse to this estate, and has no professional connection with any creditor or party in interest, or its respective attorneys, and accountants." Counsel further stated that his "only connection with the Debtor is that of attorney for the Debtor as of the date of the petition for purposes of representing Debtor in connection with this Chapter 11 filing." (App. to Employ, ECF No. 11).

These representations were not accurate. Counsel does not disagree with the U.S. Trustee's allegations that he has connections to Debtor in at least the following cases,[1] which were not disclosed in his Rule 2014 Affidavit:

1. <u>State of Arizona  v. Kenneth L. Stevenson</u>, Yuma County Superior Court Case No. S1400-CR2010-00916. Counsel represented Debtor in Debtor's criminal case, which was pending on the petition date.

2. <u>AEA Federal Credit Union v. Yuma Funding Inc., an Arizona Corporation; Maria A. Stevenson and Kenneth L. Stevenson, husband and wife; Tammy S. Sherman and John Doe Sherman, husband and wife;</u> . . . ., Yuma County Superior Court Case No. S-1400-CV2010-00062. Counsel represents Kenneth Stevenson, his wife, and his daughter and son-in-law, Tammy and David Sherman, in this lawsuit that was filed in January, 2010.

3. <u>In  re David  and  Tammy  Sherman</u>, Bankruptcy Case No. 0:l0-bk-04066-EWH. Counsel  represents  the debtors, who  are Debtor's daughter and son-in-law, in this chapter 7 case filed  on

---

[1]	The U.S. Trustee further notes that it has been alleged by creditors of this estate and of the estate of Tammy Sherman that, in April 2010, Mr. Cook solicited their business to pursue their claims against his other clients, Kenneth Stevenson and Yuma Funding.

One of the reasons the Wemhoffs, who were such investors, objected to dismissal of this case was because Counsel had withdrawn his offer to represent them and, instead, was representing Kenneth Stevenson. Then, the Wemhoffs failed to appear at the April 8, 2011 hearing.

Because of issues of standing and mootness, the court declines to consider these additional facts in its analysis for a denial of compensation.

February 18, 2010. According to the schedules, Kenneth Stevenson is a 20% owner in Yuma Funding, his daughter's business. The two cases list many of the same individual creditors, who were investors in Yuma Funding and who purportedly held security interests in the T & K inventory. Thus, although they are not scheduled as such, the U.S. Trustee has alleged that Shermans and Kenneth Stevenson are co-debtors.

4. <u>In re Two Guys Auto Center, LLC</u>, Bankruptcy Case No. 0:l0-bk-07673-EWH. Counsel represents the debtor in this case, which was filed as a chapter 11 case on March 19, 2010, then converted to chapter 7 case on April 28, 2010. Although Kenneth Stevenson is not listed as an equity owner, the T& K inventory is listed as his personal property in <u>this</u> case. In Debtor's case, he indicates that most of the vehicle inventory of T & K--his primary asset–was "seized" and liquidated by the chapter 7 trustee in the <u>Two Guys Auto Center</u> case.

In the "Disclosure of Compensation of Attorney For Debtor(s)," Counsel disclosed a $10,000 fee for routine bankruptcy services, which had been paid as a pre-petition retainer by Steve Ponce, a "family member" of Debtor's. The $10,000 fee did not include representation "in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding." The Disclosure also indicated that the $1,039.00 filing fee had been paid. (Later, in Counsel's fee application, he included the filing fee in the retainer amount, making the retainer $11,039.00.)

No plan or disclosure statement has been filed, although they were due, per the court's Case Management Order, by January 21, 2011. Allegedly, Debtor was released from prison in either December 2010 (*see* Notice of Reinstatement, ECF No. 36), or January 2011 (*see* Motion to Enlarge Exclusivity Period, ECF No. 44 ). Debtor thereafter moved for an extension of the

4

Case 0:10-bk-30556-JMM    Doc 72    Filed 06/09/11    Entered 06/10/11 13:47:48    Desc
Main Document - Motion to Dismiss Case    Page 4 of 22

exclusivity period in which to file the plan and disclosure statement; that motion is pending and has become moot in light of subsequent events. (ECF No. 44).

Meanwhile, the U.S. Trustee filed a Motion to Dismiss or Convert based on a litany of shortcomings, including failure to file any monthly operating reports and to pay quarterly fees. At the January 24, 2011 hearing on the motion, Counsel stated that Debtor had filed a motion for voluntary dismissal (ECF No. 47). The U.S. Trustee stated that it did not object to dismissal on condition that Debtor paid the quarterly fees and Counsel provide proof that the retainer was not used for the criminal defense of Debtor. The court orally granted the motion, but a formal order was not lodged or issued. Creditors Theresa and Wilfred Wemhoff then objected to conversion or dismissal (ECF No. 62), maintaining that Debtor should pay restitution to his victims.

Thereafter, Counsel, on behalf of Debtor, filed the subject First and Final Application for Payment of Compensation for Debtor's Counsel. Counsel's fee statement requested a total fee of $11,039 (including the $10,000 pre-petition retainer plus $1,039.00 for the filing fee). Pre-petition draws amounted to $3,385.50, leaving a retainer balance of $7,563.50. Counsel sought approval of a total of $11,039.00, notwithstanding his argument that the total amount of fees calculated on an hourly basis was $13,690.00, plus $1,157.55 in expenses, or $14,847.55 for total fees and costs incurred.

The U.S. Trustee objected to the Fee Application (ECF No. 60), and Debtor responded (ECF No. 65).

The court *sua sponte* noticed a combined hearing on Debtor's motion to dismiss and the fee application. In preparation for the hearing, Counsel filed a copy of the Attorney Fee Agreement with Debtor, dated September 20, 2010. He also filed affidavits of two of his legal assistants as to their duties in bankruptcy cases.

At the hearing on April 8, 2011, only Counsel and the U.S. Trustee appeared. The Wemhoffs did not appear, even though they were given notice of the hearing (*see* ECF No. 64). The disputed issues had not been resolved and centered around the propriety and reasonableness of Counsel's fee request. Counsel requested an evidentiary hearing. In order to review the entire case

and the fee application, in particular, prior to granting dismissal, this matter was taken under advisement.

## IV. ISSUES

1.   Whether the retainer funds are property of the estate.
2.   Whether Counsel should be disqualified and/or denied compensation on grounds of failure to disclose all of his connections with the Debtor in his Bankruptcy Rule 2014 statement.
3.   Whether the attorney fee request is reasonable.
4.   Whether this case should be dismissed.

## V. DISCUSSION

### A. Source of Compensation

The gravamen of this contested matter is whether Counsel, as attorney for the chapter 11 Debtor, is entitled to an award of attorney's fees. As a threshold matter, Counsel argues that the retainer is not property of the estate because it was paid by a third-party source. Counsel has not, however, waived any claim for fees against the bankruptcy estate.

An attorney is required to make full disclosure as to the source of the retainer or the fees may be denied in their entirety. In re Crimson Investments, N.V., 109 B.R. 397, 400 (Bankr. D. Ariz. 1989) (retainer paid by unsecured creditors controlled by debtor's principals); In re Park-Helena Corp., 63 F.3d 877 (9th Cir. 1995) (retainer paid by debtor's president). The bankruptcy court is further obligated to review the fee arrangement irrespective of the source of compensation in order to determine whether the payment created a conflict of interest. Crimson Investments, 109 B.R. at 400; Park-Helena, 63 F.3d at 881; 11 U.S.C. § 329; FED. R. BANKR. P. 2014, 2016, and 2017.

Here, Counsel made the required disclosure by indicating on his Disclosure of Compensation that the source was Steve Ponce, a family member. Later, Counsel disclosed that Steve Ponce is the Debtor's son-in-law. *See* Debtor's Resp. to Obj., ECF No. 65.

There are no allegations that Steve Ponce holds an interest that is adverse to this bankruptcy estate, nor did this court find any evidence of a conflict in the record. Therefore, the source of the retainer is a nonissue.

With regard to Debtor's unsubstantiated argument that the retainer is not property of the estate, this court disagrees. Funds paid to an attorney by a client for services "become property of the estate *only if, under applicable state law*, the debtor has an interest in the [funds] at the time of filing the bankruptcy case." In re GOCO Realty Fund I, 151 B.R. 241, 250 (Bankr. N.D. Cal. 1993).

In Arizona, a lawyer "shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." E.R. 1.15(c), Rule 42, Rules of the Supreme Court of Arizona. Our district's bankruptcy court has held:

> Arizona law also offers no exception to the general rule that a retainer, taken by a debtor's attorney for services to be rendered during a bankruptcy case, is to be held in trust for the debtor, except to the extent that attorneys' fees are allowed by the Court pursuant to Bankruptcy Code Sections 330 and 331 governing compensation. See e.g., Leff, supra 88 B.R. 105, 107; In re Tri–County Water Ass'n, Inc., 91 B.R. 547, 550–51 (Bankr.D.S.D.1988); In Kinderhaus Corp., 58 B.R. 94, 97 (Bankr.D.Minn.1986). Under Arizona law, property held by an attorney for the client's benefit is held in trust. Matter of Carragher, 157 Ariz. 219, 756 P.2d 316, 319 (1988). The current ethical rules adopted by the Arizona Supreme Court to govern the conduct of Arizona attorneys require attorneys to segregate "property of client or third persons." ER 1.15, Rule 42, Rules of the Supreme Court of Arizona. Therefore, a retainer, comprised of the funds received by Debtor's Counsel as prepetition or postpetition payments from the Debtor or an interested party, is estate property held in trust for the benefit of the estate. . . .

Crimson, 109 B.R. at 402 (emphasis added).

In other words, notwithstanding an ultimate third party owner of the funds, the retainer is held in trust for Debtor's estate to the extent it is utilized to compensate the estate's attorney. The estate, therefore, has an equitable interest in the trust funds. Property of the estate

7

includes any legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541(a)(1).

Furthermore, § 330(a) of the Bankruptcy Code gives this court the power to control the award of attorney fees and authorizes this court to inquire into and limit compensation "from any source."  <u>In re Bennett</u>, 133 B.R. 374 , 377 (Bankr. N.D. Tex. 1991).

Therefore, this court has subject matter jurisdiction to authorize the application of the retainer for Counsel's fees and to review the fees for reasonableness under § 330 of the Code.

## B.  Rule 2014 Disclosure

When applying for employment, Bankruptcy Rule 2014 requires the professional to disclose "all . . . connections with the debtor, creditors, [or] any other party in interest . . . ."  FED. R. BANKR. P.  2014(a).  In addition, a professional must be disinterested.  11 U.S.C. § 327(a); § 101(14).  Thus, Counsel must first disclose all connections so that the court can assure itself that there are no conflicts of interest and the attorney is disinterested.  <u>See In re Elias</u>, 188 F.3d 1160, 1163 (9th Cir. 1999).  The Code defines a "disinterested" person, *inter alia*, as one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., *or for any other reason*."  11 U.S.C. § 101(14)(C) (emphasis added).[2]

The disclosure requirements of Bankruptcy Rule 2014 are strictly applied and nondisclosure is sanctionable.  9 COLLIER ON BANKRUPTCY ¶ 2014.05 (16th ed. 2011).  The bankruptcy court has broad discretion to find that serious omissions warrant disqualification or a reduction, denial or disgorgement of compensation, or other remedies such as dismissal or conversion of the case.  <u>Id</u>.

---

[2]      The U.S. Trustee has not alleged that Counsel should be disqualified because he was not disinterested, as that term is defined in the Code.  Nor did Debtor address the issue of disinterestedness in his Response.  Nondisclosure and disinterestedness are distinct issues.  The court does not need to address the latter one, in light of the posture of this contested matter and the court's ruling.

The U.S. Trustee maintains there are grounds to both disqualify Counsel and deny compensation because Counsel failed to disclose all of his connections with Debtor, Debtor's family and Debtor's business interests, including co-debtors and business associates with respect to much of the same debt listed in this case.

Counsel's Bankruptcy Rule 2014 Statement disclosed that his "only connection with the Debtor is that of attorney for the Debtor as of the date of the petition for purposes of representing Debtor in connection with this Chapter 11 filing." That statement was incomplete and inaccurate. In fact, Counsel also represented Debtor in his criminal case, the co-debtor Shermans in their personal bankruptcy case, and Two Guys Auto Center, LLC., the entity with an interest in Debtor's primary inventory asset, and which had seized the inventory to pay its own creditors.

Debtor responded to this objection by admitting that Counsel has these connections but stating that "there was, and is no reason to believe there were potential conflicts as any related parties have the same large secured creditor (AEA Federal Credit Union) relating to the same commingled issues." Debtor's Resp., ECF No. 65.

Aside from the fact that Debtor listed <u>no</u> secured creditors (AEA is listed as a disputed unsecured creditor), Debtor misses the point. The bankruptcy court is obliged to determine eligibility for employment under § 327 as well as the existence of potential conflicts according to the disclosures that are made. <u>See In re B.E.S. Concrete Prods., Inc.</u>, 93 B.R. 228, 235-36 (Bankr. E.D. Cal. 1988). Professionals who request court approval of employment have "a duty to disclose actual or potential conflicts of interest which may bear upon their qualification...." <u>In re Roberts</u>, 75 B.R. 402, 410 (D. Utah 1987). This is a broad test of whether the employment is in the best interest of the estate. 9 COLLIER ON BANKRUPTCY, <i>supra</i>, ¶ 2014.03. An attorney may not withhold information because he or she believes there is no conflict. <u>B.E.S. Concrete Prods.</u>, 93 B.R. at 235-36 (citing <u>In re Haldeman Pipe & Supply Co.</u>, 417 F.2d 1302, 1304 (9th Cir. 1969)). Even when there is no actual harm to the estate, the bankruptcy system itself is harmed by a professional's failure to make required disclosures. <u>In re LSS Supply Inc.</u>, 247 B.R. 280, 283 (Bankr. D. Ariz. 2000). Thus, even unintentional breaches of the duty to disclose will support disqualification and denial of compensation. <u>See In re BH & P, Inc.</u>, 949 F.2d 1300, 1317-18 (3rd Cir. 1991).

9

Case 0:10-bk-30556-JMM   Doc 72   Filed 06/09/11   Entered 06/10/11 13:47:48   Desc
Main Document - Motion to Dismiss Case   Page 9 of 22

1    Whenever an attorney is employed to represent others who would be looking to

2    Debtor for reimbursement, a *potential* conflict exists.  See B.E.S. Concrete Prods., 93 B.R. at 236;

3    *but see* 11 U.S.C. § 327 (c) (representation of a creditor of the estate may not be the sole reason for

4    disqualification unless there is an objection based on an *actual* conflict).  An "adverse interest"

5    includes the professional's assertion of (1) an economic interest that would tend to lessen the value

6    of the bankruptcy estate, (2) an economic interest that would create either an actual or potential

7    dispute in which the estate is a rival claimant, or (3) possession of a predisposition under

8    circumstances that create a bias against the estate.  See In re AFI Holding, Inc., 530 F.3d 832, 845

9    (9th Cir. 2008).

10    In this case, it is clear that Counsel failed to disclose all of his professional

11    connections with Debtor and Debtor's relatives and related entities and their bankruptcy cases.  For

12    example, Debtor and Two Guys Auto Center purportedly claimed ownership of the same personal

13    property.  Although much of Debtor's inventory was liquidated by the Two Guys Auto Center's

14    chapter 7 trustee prior to the filing of Debtor's bankruptcy petition, and notwithstanding the fact that

15    Counsel apparently sought a global settlement with AEA, Counsel had a duty to disclose his dual

16    representation.  In addition, Debtor's co-debtor status, via Yuma Funding, with the Shermans could

17    be adverse to his personal bankruptcy estate.  Finally, Counsel's representation of Debtor in the

18    criminal matter could potentially overlap with services rendered in the bankruptcy case.  Indeed,

19    Counsel has admitted that his fee statement improperly included some services rendered in the

20    criminal case, as can be seen in the analysis below. *See* Debtor's Resp. to Obj., ECF No. 65.

21    The court therefore concludes that Counsel's nondisclosure is sanctionable.  Based

22    on Counsel's reasoning that the filing of this petition was an attempt to deal with the shared debt,

23    however, the court does not believe that disqualification is appropriate.  The court concludes that

24    an appropriate sanction would be to deny Counsel's request for the balance of the retainer funds in

25    the amount of $7,653.50.

26

27

28

## C. Reasonableness of Compensation

Since the court herein approves Counsel's fees and costs in the amount of $3,385.50, which is the amount of fees and costs that Counsel has already drawn from the pre-petition retainer, the court will analyze the reasonableness of the remaining requested fees.

## 1. The Standards

Whether a professional is entitled to compensation, and how much, is determined by reference to the relevant portions of §§ 503(b) and 330(a), as well as application of the "lodestar" method (lawyer time multiplied by an hourly rate), and evaluation of the lodestar in light of the In re Johnson factors,[3] which parallel the factors listed in § 330(a)(3), below. Essentially, it is the quality of representation and the results that are most significant in determining the amount of the fee. In re Casco Bay Lines, Inc., 25 B.R. 747, 756 (1st Cir. BAP 1982). Ultimately, the determination is left to the court's own experience and discretion. See In re Garcia, 335 B.R. 717, 723 (9th Cir. BAP 2005) (a decision on an attorney fee request rests within the sound discretion of the trial judge and will not be disturbed absent abuse of discretion or an erroneous application of the law).

Section 503(b) provides an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . . " and for any "compensation and reimbursement awarded under section 330(a) . . . " Section 330(a)(1)(A) provides that an attorney may be awarded

---

[3] See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

"*reasonable* compensation for actual, necessary services" rendered by the attorney.  (Emphasis supplied.)

Section 330 also states, in relevant part:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The court must assess whether the work performed was necessary at the time, and whether too much time was expended for the required tasks.  In other words, "a bankruptcy court must examine the circumstances and manner in which services are performed and results achieved to determine a reasonable fee."  In re Garcia, 335 B.R. 717, 724 (9th Cir. BAP 2005) (citing In re Mednet, 251 B.R. 103, 108 (9th Cir. BAP 2000)).

In examining the circumstances and manner in which services are performed and results achieved to determine a reasonable fee, the court considers:

(a)    Were the services authorized?

(b)     Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c)     Are the services adequately documented?

(d)     Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e)     In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

Garcia, 335 B.R. at 724 (citing Mednet, 251 B.R. at 108).

In exercising reasonable billing judgment, the professional must consider:

(a)     Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b)     To what extent will the estate suffer if the services are not rendered?

(c)     To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

Mednet, 251 B.R. at 108 n. 7 (citing Unsecured Creditors' Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 959 (9th Cir.1991)).

Section 330(a)(4) also provides a guide to that which is not compensable:

[T]he court shall not allow compensation for . . .

(i)     unnecessary duplication of services; or

(ii)     services that were not –

(I)     reasonably likely to benefit the debtor's estate; or

(II)     necessary to the administration of the case.

In Garcia, the Ninth Circuit BAP rejected a standard that services are only compensable if they result in a material benefit to the estate. It held that under § 330, a professional need only demonstrate that the services were "reasonably likely to benefit the estate" at the time rendered. Garcia, 335 B.R. at 724 (citing Mednet, 251 B.R. at 107-08). Thus, benefit to the estate is not

13

restricted to only a monetary benefit.  See In re Crown Oil, Inc., 257 B.R. 531, 540 (Bankr. D. Mont. 2000) (quoting In re Kohl, 95 F.3d 713, 714 (8th Cir. 1996)).

## **2.  Application of the Law to the Facts.**

Debtor filed the petition on September 23, 2010.  Counsel's fee application requests compensation for services performed and costs incurred between September 14, 2010 and January 26, 2011.  The accounting pursuant to the Fee Application (ECF No. 53) is:

| | |
|---|---|
| Fees | $ 13,690.00 |
| Expenses | 1,157.55 |
| TOTAL: | $ 14,847.55 |

However, Counsel is only applying for approval of the total amount of $11,039.00 and payment of the retainer balance of $7,653.50, calculated as follows

| | |
|---|---|
| Retainer | $11,039.00 |
| Less filing fee | $ 1,039.00 |
| Less pre-petition draw | $ 2,346.50 |
| Balance | $ 7,653.50 |

## **(a)  Fee Statement**

The fee statement will be reviewed on a monthly basis, comparing the services rendered  to the docket entries in this case.

## September 2010

In September, Debtor filed a bare petition, with a short motion to waive the credit counseling course, list of creditors, routine declarations, and an application to employ counsel (and order), with Rule 2014 and 2016 statements. Counsel's fees generally broke down as follows:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (client conferences; early case pleadings) | 17.00 | $3,120.00 |
| 2 | Employment application | 1.50 | $ 262.50 |
| | | TOTAL | $3,382.50 |

Administrative services may have required more time than usual because Debtor was incarcerated. The U.S. Trustee has not specifically objected to these entries.

For September, total fees incurred were $3,382.50.

## October 2010

In October 2010, Debtor filed a motion to extend time to file the Schedules and Statements, then filed the Schedules and Statements, and prepared and filed a motion to waive Debtor's appearance at the § 341 meeting. The U.S. Trustee objected to the motion to waive Debtor's appearance. Counsel's fees generally broke down as follows:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administrative (client conferences; schedules and statements; property release form) | 15.00 | $2,770.00 |
| 2 | Motions (to waive appearance; to extend time) | 2.80 | 475.00 |
| | | TOTAL | $3,245.00 |

15

The U.S. Trustee objected to the entry of 10/21/10: "Prepare trial book for hearing," 0.8 hours $100 (MM), because it was unknown what hearing this referred to. Debtor responded that the trial book was for the § 341 Meeting, although it is unclear why a "trial book" is necessary for a § 341 Meeting. Therefore, this objection will be overruled.

The U.S. Trustee objected to the entry of 10/22/10: "Prepare for, travel to and attendance at 341 meeting," 1.9 hours, $617.50 (RMC). The court granted Debtor's motion to waive his appearance at the § 341 Meeting. Debtor responded that, although his appearance had been waived, Counsel's appearance had not been waived. This response is not persuasive. The U.S. Trustee produced an email to Counsel, dated October 20, 2010, which clearly advised him that "[t]he Court has waived the debtor's appearance so the 341 will not occur this week." The court agrees with the U.S. Trustee that Counsel's appearance was unnecessary, and therefore $617.50 will be deducted from the total.

For October, total fees incurred were $2,627.50.

**November 2010**

In November 2010, there were only eight entries on the docket. Debtor filed a Power of Attorney. The U.S. Trustee filed a motion to convert or dismiss the case. Counsel's fees generally broke down as follows:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administrative (conferences; email) | 3.00 | $515.00 |
| 2 | Motions (to waive appearance; convert or dismiss) | 6.90 | 1,562.50 |
| 3 | Claims (AEA) | 1.50 | 487.50 |
| 4 | BORT Court | 0.30 | 57.50 |

16

Case 0:10-bk-30556-JMM    Doc 72    Filed 06/09/11    Entered 06/10/11 13:47:48    Desc
Main Document - Motion to Dismiss Case    Page 16 of 22

| 5 | Unknown management conference | 1.40 | 455.00 |
|---|---|---|---|
| | | TOTAL | $3,077.50 |

The U.S. Trustee objected to the BORT Court entries. Debtor concedes that those were in connection with the criminal matter. Therefore, $57.50 will be deducted from the total for November.

Debtor further responded that the management conference of 11/10/10 had been improperly inserted into this fee application. Therefore, $455.00 will be deducted from the total for November.

The U.S. Trustee further objected to the 11/10/10 entry for 2.8 hours (ADG ) ($350.00) and 3.0 hours (RMC) ($975.00), for a total of $1,325.00 to prepare for and attend the hearing on the U.S. Trustee's motion to reconsider the court's order granting a waiver of Debtor's appearance at the § 341 meeting. There were no appearances for Debtor at the hearing, and the time billed is "outrageous," according to the objection.

Debtor's response explained that Counsel waited on the phone for over two hours to appear telephonically, following his attendance at an auction hearing and a criminal court hearing the same morning. However, the case had already been called and disposed of prior to the auction hearing, unbeknownst to Counsel. Counsel and his staff thought that his schedule had been accommodated and coordinated with the bankruptcy calendar by Clerk's staff, (see declarations and emails). ADG is Counsel's legal assistant, who stated that she waited on the phone for a total of 2.30 hours that day, along with Counsel.

Due to the mix-up, the number of hours expended may have been accurate, but the fees are excessive when the ultimate result of Counsel's overly-taxed morning schedule was that Debtor failed to make an appearance. The court believes a reasonable fee would be one hour for Counsel ($325.00). It is unreasonable for the legal assistant to also charge for holding on the line together with Counsel. Therefore, $1,000.00 will also be deducted from the total.

For November, the total fees incurred were $1,565.00.

Case 0:10-bk-30556-JMM    Doc 72    Filed 06/09/11    Entered 06/10/11 13:47:48    Desc
Main Document - Motion to Dismiss Case    Page 17 of 22

**December 2010**

In December 2010, there were only two entries on the docket. Debtor filed a notice of reinstating Kenneth L. Stevenson as debtor-in-possession. (Debtor had been released from prison.) Counsel's fees generally broke down as follows:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administrative (conferences; email; ECF, misc.) | 1.70 | $292.50 |
| 2 | Claims (AEA proposed settlement) | 0.30 | 97.50 |
| 3 | Motions | 1.30 | 262.50 |
| 4 | Conference re: news article and radio show | 0.50 | 62.50 |
| | | TOTAL | $715.00 |

The U.S. Trustee objected to the fee request for the conference regarding a news article and upcoming radio show. Debtor explained as follows:

> In regards to the timeslip of 12/2/2010, Mr. Cook discussed with Legal Assistant Andrena Geiler the Yuma daily Sun newspaper article involving Debtor and creditor AEA Federal Credit Union. Mr. Cook was also making arrangements to appear on a local radio show in regards to this matter to clarify the vicious statements made regarding Debtor.

Debtor's Resp., ECF No. 65. Debtor's explanation fails to explain how this time entry benefitted or advanced the Debtor's chapter 11 case. It is disallowed, and will be deducted from the total.

For December, total fees incurred were $622.50.

**January 2011**

In January 2011, a hearing and continued hearing were held on the U.S. Trustee's motion to convert or dismiss. Debtor filed a motion (and order) to extend time to file the plan and disclosure statement, but then filed a motion for voluntary dismissal, which is also pending this

decision. Debtor then filed the final application for attorney's fees. Counsel's fees generally broke down as follows:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administrative (conferences; email; ECF, misc.) | 1.40 | $275.00 |
| 2 | Claims (misc) | 1.50 | 307.50 |
| 3 | Motions | 13.90 | <u>2,687.50</u> |
| | | TOTAL | $3,270.00 |

The U.S. Trustee objected to the 1/24/11 entry for 2.4 hours (RMC) ($780) and 1.5 hours (ADG) ($187.50) to prepare for and attend the hearing on the motion to convert or dismiss, because it only lasted a few minutes, was uncontested based on the Debtor's own motion to dismiss, and there is no support for the services of Counsel's legal assistant.

Debtor responded that he asked his legal assistant to attend (see Decl. of A. Geiler, ECF No. 67), and both of them reviewed the file and pleadings in preparation for the hearing.

The court believes that the hours expended for both preparation and attendance at the hearing are excessive, and sustains the U.S. Trustee's objection. Therefore, $967.50 will be deducted from the total.

For January, total fees incurred were $2,302.50.

### Total Fees

In sum, the total fees incurred for the compensation period, as adjusted, is:

$  3,382.50
$  2,627.50
$  1,565.00
$     622.50
$  <u>2,302.50</u>

$10,500.00

This figure ($10,500.00) is less than the amount requested by Counsel ($11,039.00).

## (b)  Services Necessary or Beneficial to Estate

The U.S. Trustee also objected that the services did not benefit the estate.  Subsection 330(a)(3)(C) demands to know "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; ...."   As this court has stated:

> In general, the statutory factors under Section 330 and the <u>Johnson</u> factors consist of three components: (1) [the quantity] factor, comprised of documented time at customary billing rates; (2) the quality factor, comprised of the competency of the representation, taking into account the novelty and difficulty of the issues presented, the skill required, time constraints, and the personal qualifications of the applicant; and (3) the result factor, comprised of the actual results achieved in the case.

<u>In re AVC Villa Del Lago at Ocotillo Devco, L.L.C</u>., 2010 WL 119830 at *5 (Bankr. D. Ariz. January 6, 2010) (unpub. mem. dec.) (alteration added) (quoting <u>In re Jensen-Farley Pictures, Inc</u>., 47 B.R. 557, 587 (Bankr. D. Utah 1985)).

A review of the Schedules and Statements in this case show that Debtor was incarcerated at the time he filed the chapter 11 petition.  He was retired from his auto dealership, and his 20% interest in Yuma Funding and $337,491.41 in bank accounts had been put into receivership.  His current monthly income was only $1,330 in social security benefits.  He listed no real property.  His vehicle inventory had been seized by the Two Guys Auto Center trustee.  Debtor did not file a plan and disclosure statement; he failed to file any monthly operating reports or pay quarterly U.S. Trustee fees, and failed to file other necessary documents.  Debtor made no effort to regain control of his alleged property.  It is unclear as to how he could possibly "reorganize" under chapter 11.

Debtor listed no secured creditors,  approximately $3,000 in unsecured priority tax debt, and over $4.7 million in general unsecured debt.

Ultimately, Debtor filed a motion to voluntarily dismiss this case.  The Debtor should have filed a chapter 7, rather than waste everyone's time in a chapter 11 case.

Case 0:10-bk-30556-JMM    Doc 72    Filed 06/09/11    Entered 06/10/11 13:47:48    Desc
Main Document - Motion to Dismiss Case    Page 20 of 22

1    Therefore, there have been <u>no</u> actual results achieved in this chapter 11 case.

2    Moreover, since Counsel concurrently represented the debtors in the related bankruptcy cases, he

3    was not prevented from taking other employment during the short duration of this case. In addition,

4    Counsel knew the posture of Debtor's case in relationship to the related cases and could have

5    predicted this outcome.

6    Nonetheless, giving Counsel and Debtor the benefit of the doubt based on the

7    "undesirability" of the case, <u>see Johnson</u>, 488 F.2d at 719, and his stated motivation to resolve the

8    shared debt to AEA Federal Credit Union, the court acknowledges that some of the fees incurred

9    were reasonable in the early stages of administration. The court further finds that Counsel has been

10   adequately compensated for those services in the amount of $3,385.50, which is the amount of fees

11   and costs that Counsel has already drawn from the retainer.

12   No more is warranted. The case has been a colossal waste of time from the beginning.

13   The final result--dismissal--was pre-ordained.

14

15                              **D.  Dismissal of Case**

16

17   Both the U.S. Trustee and Debtor have filed motions to dismiss this case. Having

18   resolved the U.S. Trustee's concerns and objections over the fee application, the court will grant

19   Debtor's motion dismiss the case, pursuant to § 1112(b). Cause for dismissal exists because there

20   is no reasonable likelihood of rehabilitation, and also because Debtor has failed to file required

21   reports and pay fees. 11 U.S.C. § 1112(b)(4). The creditors of the estate will not suffer "plain legal

22   prejudice" by dismissal. <u>See In re Hall</u>, 15 B.R. 913, 915-16 (9th Cir. BAP 1981) (ch. 7); <u>In re</u>

23   <u>Richmond Unified School District</u>, 133 B.R. 221, 224 (Bankr. N.D. Cal. 1991) ("The same ['legal

24   prejudice'] rule would presumably apply to a Chapter 11 debtor's motion to dismiss pursuant to

25   § 1112(b) . . . .").

26

27

28

## VI. RULING

In its discretion, the court determines that Counsel's undisputed failure to fully disclose all of his professional connections with Debtor is sanctionable in the amount of the balance sought from the retainer, or $7,653.50.

After a detailed review of the fee application and the objection thereto filed by the U.S. Trustee, the court finds that a reasonable fee for Counsel's work in this case is $3,385.50, the amount of the retainer funds which were applied pre-petition. Said funds are to be returned to the source, Steve Ponce. A certificate that this has been accomplished must be filed with this court.

Debtor's motion to dismiss will be granted. However, it would be futile to require that Debtor become current in filing monthly operating reports and payment of the U.S. Trustee fees. It is best to simply get this case out of the system.

A separate order will be entered (FED. R. BANKR. P. 9021). Any party aggrieved by the order has fourteen days to appeal therefrom. FED. R. BANKR. P. 8002.

DATED AND SIGNED ABOVE.

COPIES to be sent by the BNC ("Bankruptcy Noticing Center") to:

Attorney for Debtor
Office of the U.S. Trustee

22

Case 0:10-bk-30556-JMM    Doc 72    Filed 06/09/11    Entered 06/10/11 13:47:48    Desc
Main Document - Motion to Dismiss Case    Page 22 of 22